**STATE of Maine**

v.

**Mary L. LUTZ.**

Supreme Judicial Court of Maine.

Argued Jan. 12, 1989.

Decided Jan. 30, 1989.

judge instructed the jury that the late charges must be paid to effect the cure, and the matter

Michael E. Povich, Dist. Atty., Carletta Bassano, Asst. Dist. Atty., Machias, Garry L. Greene (orally), Asst. Atty. Gen., Augusta, for plaintiff.

Anthony K. Ferguson (orally), Fales & Fales, P.A., Lewiston, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, HORNBY and COLLINS, JJ.

WATHEN, Justice.

The State appeals from an order of the Superior Court (Washington County, *Smith, J.*) suppressing evidence obtained during a search of a seasonal camp rented and occupied by defendant. The court found that the complaint justice had issued the warrant authorizing the search based on an affidavit that was unsupported by probable cause. The State argues on appeal that a substantial basis existed in support of the magistrate's finding of probable cause and that the Superior Court therefore erred in suppressing the evidence. We agree.

On June 26, 1987 Detective Stephen Pickering of the Maine State Police executed an affidavit and request for a search warrant for a seasonal camp structure and an adjacent smaller structure, located in Deblois and occupied by defendant. In the affidavit, Detective Pickering asserted that probable cause existed to believe that the struc-

has not been pursued here.

tures in question contained evidence of criminal conduct, including controlled drugs and other contraband, business records relating to the cultivation of marijuana, paraphernalia, tools, and equipment relating to the cultivation of marijuana, and fingerprints establishing the identity of the occupants and connecting the occupants with the cultivation of marijuana.

The facts alleged in the affidavit that led Detective Pickering to believe that the structures in question contained evidence of criminal conduct may be summarized as follows: On June 23, 1984 a confidential informant contacted Detective Pickering and advised him that marijuana was growing near the camp structures. Following the informant's directions, Detective Pickering entered the woods south of the seasonal camp, traveled west, and found a beaten path. When he followed the path, he discovered three marijuana gardens situated along the path and one to the north of the path. He continued along the path and it led directly to the rear of the seasonal camp structure. Together, the four gardens contained approximately 230 marijuana plants and the tallest plant was approximately two feet tall. Detective Pickering observed that the same type of potting soil, fertilizer, and chicken wire fencing was used in all four marijuana gardens. The diagram drawn by Detective Pickering that is attached to the affidavit reflects that a camp for migrant workers is situated slightly to the north of the seasonal camp.

On June 26, 1987 a named individual advised Detective Pickering that James and Cheryl Williams of Fairfield owned the seasonal camp but that defendant was believed to reside at the camp. That individual also informed the detective that defendant owns a blue Ford Granada and that a man who also stays at the camp owns a dark blue Ford pick-up truck. Detective Pickering had observed two vehicles of that description parked at the seasonal camp approximately one month earlier on May 23, 1987.

Detective Pickering is a graduate of the Maine State Police Academy and is assigned to the Drug Enforcement Administration Anti–Smuggling Task Force of the Maine State Police. He has participated in several investigations of illicit drug activity, involving marijuana, hashish, cocaine, and amphetamines. Based on his education and experience, Detective Pickering has found that it is common for the growers of such drugs to keep business records such as ledgers and journals, and for marijuana growers to maintain records of plant cultivation. He also has found that drug growers commonly use tools and other equipment in cultivating drugs and that they harvest samples early in the season for testing and personal use.

Based on the information contained in the affidavit and the diagrams attached to it, the complaint justice issued the requested warrant. A search of the seasonal camp structures yielded evidence of criminal activity. Defendant moved to suppress the evidence and the Superior Court granted the motion. The court cited the following as deficiencies in the affidavit: (1) Detective Pickering discovered the marijuana gardens on the basis of information related to him by a *confidential* informant whose reliability was unknown; (2) the affidavit does not disclose the precise distance between the path leading to the marijuana gardens and the rear of the seasonal camp structure; (3) the affidavit does not state how long Mary Lutz lived at the seasonal camp structure if indeed she was the occupant; (4) the affidavit does not state how long it takes marijuana to reach two feet; (5) the affidavit does not indicate whether there were any nearby structures or whether any other paths intersected with the path leading to the marijuana gardens; (6) the attached diagram reveals that a migrant worker camp is situated near the seasonal camp structure and the marijuana gardens; (7) the affidavit does not reflect whether there was a second path connecting the road to the path that led to the marijuana gardens.

In *State v. Knowlton*, 489 A.2d 529 (Me. 1983) this Court followed the lead of the Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), and *Massachusetts v. Upton*, 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721

(1984) (per curiam), and returned to a totality of the circumstances test for evaluating whether probable cause exists for the issuance of a warrant. "Under the totality of the circumstances test, the magistrate's probable cause finding is made upon 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Knowlton,* 489 A.2d at 531 (quoting *Brinegar v. United States,* 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). The reviewing court must read the affidavit "with all reasonable inferences that may be drawn to support the magistrate's determination." *Id.* at 532. Moreover, "a reviewing court is not to make a *de novo* determination of probable cause, but rather must accord deference to the magistrate's decision and must limit its inquiry to the question of whether there was a 'substantial basis' for the magistrate's single required finding of probable cause." *Id.* at 531. Finally, both magistrates and courts must test the affidavit "in a common sense and realistic fashion. ... Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area." *United States v. Ventresca,* 380 U.S. 102, 109, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965).

In light of this deferential standard, we uphold the magistrate's determination of probable cause and vacate the Superior Court's suppression order. In reviewing the affidavit the Superior Court apparently adopted a *de novo* standard of review. When we read the affidavit with all reasonable inferences in favor of the magistrate's determination, as we must, the deficiencies perceived by the Superior Court disappear. As an initial matter, in citing the lack of information regarding the confidential informant as a deficiency, the Superior Court failed to recognize that Detective Pickering himself observed the marijuana gardens and followed the path leading from them to the seasonal structure. In addition, based on the facts alleged in the affidavit and the accompanying diagrams, the magistrate reasonably could have concluded that the path leading to the marijuana gardens was quite close to the rear of the camp structure, that defendant occupied the premises for at least somewhat longer than a month, that the only path in the area was the one described by Detective Pickering, and that no structures other than the seasonal camp and the migrant worker camp were located in the vicinity of the marijuana gardens. Moreover, although the accompanying diagram does depict a migrant worker camp as noted by the Superior Court, the seasonal camp structure was situated between that camp and the gardens and only the seasonal camp was connected to the gardens by the path. Based on the affidavit and the attached diagrams, the magistrate therefore reasonably could have inferred that the occupants of the seasonal camp structures were tending the marijuana gardens. We conclude therefore that a substantial basis existed in favor of the magistrate's finding of probable cause.

The entry is:

Order granting defendant's motion to suppress evidence vacated; case remanded for entry of order denying defendant's motion to suppress.

All concurring.